UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALOYSIUS TERRELL DAVIS,

                         **Plaintiff,**

            *- against -*

EZRA JUDYAH YISRAEL and WESTERN EXPRESS, INC.,

                         **Defendants.**

16 CV 1574 (LMS)

**DECISION & ORDER**

**THE HONORABLE LISA MARGARET SMITH, U.S.M.J.**[1]

      On April 1, 2019, the undersigned issued a Decision and Order finding that Aloysius Terrell Davis ("Plaintiff") suffered a "serious injury" under the relevant portions of the New York Insurance Law, but that upon vocational rehabilitation, he could obtain some kind of entry-level future employment . ECF No. 52. Notwithstanding the foregoing, the undersigned was unable to issue a decision as to an award of damages as to Plaintiff's past and future lost income due to deficiencies in the parties' expert submissions. Accordingly, and as more fully explained in the undersigned's April 1, 2019, decision, the parties were directed to submit supplemental expert reports computing Plaintiff's past lost income and pre-injury adjusted earnings in future years using the appropriate annual income average of $21,035[2] and the appropriate unemployment adjuster percentage based on Georgia's compensation rate. Id. at 53. The undersigned also noted in her April 1, 2019, decision that she was reserving on the calculation of

---

[1] On June 27, 2016, the parties consented to the undersigned's exercise of jurisdiction over this matter pursuant to 28 U.S.C. § 636(c). ECF No. 16

[2] In the April 1, 2019, decision, the undersigned articulated her reasons for adopting $21,035 as Plaintiff's average income. See id. at 48-50.

1

damages for past, present, and future pain and suffering until the supplemental expert reports were received. After reviewing the parties' supplemental submissions and for the reasons stated hereinafter, judgment in the amount of $460,764.46 will be entered in favor of Plaintiff.

## I.  THE PARTIES' SUPPLEMENTAL SUBMISSIONS

### A.  Plaintiff's Supplemental Expert Report

On April 17, 2019, Plaintiff submitted the supplemental expert report of Kristin K. Kucsma. ECF No. 53. Ms. Kucsma opined that the total present value of the pecuniary losses resulting from injury to Plaintiff amounted to $591,595, which did "not take into account the ramifications of intangible, non-economic losses." ECF No. 53-1 at 2.[1] In accordance with the undersigned's April 1, 2019, decision, Ms. Kucsma used $21,035 as Plaintiff's pre-injury earnings and also applied Georgia's compensation benefit rate to obtain the correct unemployment adjuster percentage. Id. at 5, 7-8. Ms. Kucsma concluded that Plaintiff's past lost income was $67,061. Id. at 9.

Turning next to Plaintiff's pre-injury adjusted earnings in future years, Ms. Kucsma noted that she based her computation on the assumption that Plaintiff "will not re-enter the active labor force due to the injury." Id. She concluded that Plaintiff's pre-injury adjusted earnings in future years was $524,534. Id. at 10-13.

Accordingly, Ms. Kucsma opined that the present value of both Plaintiff's past and future lost earnings was $591,595. Id. at 13.

---

[1] Citations to Ms. Kucsma's report refer to the actual page numbers of her report and not the page numbers interposed by the electronic docketing system.

### B. Defendants' Supplemental RebuttalExpert Report

On May 2, 2019, Defendants submitted the supplemental rebuttal expert report of Michael J. Garibaldi. ECF No. 54.

Mr. Garibaldi did not contest Ms. Kucsma's past lost income computation. Id. at 5. However, he did take issue with Ms. Kucsma's pre-injury adjusted earnings in future years computation. Specifically, he noted that her computation was based on the assumption that Plaintiff would not re-enter the workforce which was "contrary to the Court's findings." Id. Mr. Garibaldi explained that in computing Plaintiff's future lost earnings, he used the annual income average of $21,035 for the year 2016 and "increased the amount to $22,696 to reflect 2019 dollars." Id. at 6. He then noted that he computed Plaintiff's future year earnings by using $19,822, the 2017 entry-level annual earnings of an individual in Clayton County, Georgia as set forth in Ms. Kucsma's original expert report, and "increased this amount to $20,805 to reflect 2019 dollars." Id. Mr. Garibaldi further explained that he applied a present value factor of four percent and also "adjusted for the 83% earnings factor." Id. Accordingly, he concluded that Plaintiff's pre-injury adjusted earnings in future years was $52,654.77 and his adjusted earnings in future years using the adjusted earnings factor of 83% was $43,703.46. Id., Ex. C.

## II. DAMAGES ANALYSIS

### A. Past Lost Income

The Court adopts Ms. Kucsma's unopposed past lost earning damages computation. Accordingly, Plaintiff's past lost earnings from 2015 through the end of April of 2019 is $67,061.

### B. Future Lost Income

The Court agrees with Mr. Garibaldi that Ms. Kucsma's future lost earnings computation is flawed. As Mr. Garibaldi correctly noted, the undersigned concluded in her April 1, 2019, decision that Plaintiff was able to sustain some kind of entry-level employment and was not unable to enter the workforce. ECF No. 52 at 51-52. Accordingly, Ms. Kucsma should have, but did not, compute Plaintiff's future lost wages based on Plaintiff earning $19,822 per year, the entry-level earnings of an individual performing a sedentary job in Clayton County, Georgia. Defs' Ex. O at 238; Pl's Ex. M at 127. Thus, because Ms. Kucsma's computation overstates Plaintiff's future lost earnings, the Court adopts Mr. Garibaldi's future lost income computation in its entirety. Accordingly, the Court finds that Plaintiff's adjusted earnings in future years is $43,703.46.

### C. Pain and Suffering

The New York Court of Appeals explained the distinction between economic losses, which can be proven with some precision, and non-economic losses, which cannot:

> [R]ecovery for noneconomic losses such as pain and suffering and loss of enjoyment of life rests on 'the legal fiction that money damages can compensate for a victim's injury.' We accept this fiction, knowing that although money will neither ease the pain nor restore the victim's abilities, this device is as close as the law can come in its effort to right the wrong. We have no hope of evaluating what has been lost, but a monetary award may provide a measure of solace for the condition created.

Okraynets v. Metro. Transp. Auth., 555 F. Supp. 2d 420, 451–52 (S.D.N.Y. 2008) (quoting McDougald v. Garber, 73 N.Y.2d 246, 254 (1989) (citation omitted)).

"Although there is no precise rule for determining damages for pain and suffering, a trier of fact is bound by a standard of reasonableness." Battista v. United States, 889 F. Supp. 716, 727 (S.D.N.Y. 1995) (citing Paley v. Brust, 21 A.D.2d 758 (1st Dep't 1964)). "[A] review of

4

jury awards and settlement amounts in recent New York cases involving comparable injuries suffered under comparable circumstances, while not binding, provides helpful guidance to the court in determining a reasonable range for the value of non-economic damages to be awarded in this case." Robinson v. United States, 330 F. Supp. 2d 261, 295-96 (W.D.N.Y. 2004); see Marcoux v. Farm Serv. & Supplies, Inc., 290 F. Supp. 2d 457 (E.D.N.Y. 2003) (explaining that "[a]ssigning dollar amounts to pain and suffering is an inherently subjective determination") (citations omitted); Berroyer v. United States, 990 F. Supp. 2d 283, 309 (E.D.N.Y. 2014) ("The Court also recognizes that the facts of each case are different and there may be case-specific variables that reasonably lead to a higher or lower amount in damages.").

In assessing the extent of the pain and related symptoms, the Court does not credit Plaintiff's testimony to its fullest extent. The Court finds that Plaintiff has suffered some pain, no doubt more intense at certain periods than others. See ECF No. 52 at 24-27. Plaintiff underwent two surgeries by Dr. Lee Kelley—an anterior discectomy and fusion of the cervical spine (Defs' Ex. Z a 1394; Defs' Ex. R at 526-27; Tr. 97; Pl's Ex. G), as well as a bilateral laminectomy at L4-5, and bilateral disc excision of the L4-5 disc. Defs' Ex. Z at 1399, ECF No. 51.[2] As for prospective pain, the undersigned infers from the medical testimony that Plaintiff will continue to experience pain and discomfort for the foreseeable future and will not be able to participate in or perform certain activities that he once could.

The Court also finds the expert opinions in this case illustrative and credits these opinions. Defendants' orthopedic expert, Dr. Afshin Eli Razi, opined that Plaintiff did not have a disability in his back that prevented him from performing "everyday activities." Tr. 208.

---

[2] Following the bench trial, on December 4, 2013, the parties submitted Dr. Kelley's operative report. See ECF No. 51.

5

Plaintiff's orthopedic expert, Dr. Jerry Lubliner, testified that Plaintiff could drive, participate in non-impact sports, and could lift up to, but not in excess of, sixty pounds. Tr. 61. The Court finds that Plaintiff is somewhat restricted in his ability to perform certain activities, but not to the extent alleged by Plaintiff.

A review of the case law illuminates the range of verdicts and damage awards in similar, but not exact, circumstances. See, e.g., Rivera v. United States, 905 F. Supp. 2d 564, 581-82 (S.D.N.Y. 2012) (awarding $250,000 for pain and suffering where plaintiff had pre-existing injuries, but also required a surgery for a cervical discectomy and fusion at C4-C5, and C5-C6); Casey v. Long Island R.R. Co., No. 01-CV-9751 (RCC), 2004 WL 1609330, at *6-7 (S.D.N.Y. Jul. 6, 2004) (upholding award of $350,000 for past pain and suffering and modifying award to $450,000 where plaintiff suffered herniated disc requiring surgery, and collecting similar cases); Lane v. United States, No. 95-CV-9690 (JGK)(JCF), 1997 WL 47789, at *5-6 (S.D.N.Y. Feb.6, 1997) (awarding $200,000 for pain and suffering where plaintiff had a moderate-sized herniation at C6-C7 requiring surgery consisting of removing the affected discs and fusion using a bone graft); Cicola v. Cty. of Suffolk, 120 A.D.3d 1379, 1379 (2d Dep't 2014) (reducing award of damages to $250,000 where injuries included disc herniation that required two spinal fusion surgeries); Kmiotek v. Chaba, 60 A.D.3d 1295, 1297 (4th Dep't 2009) (concluding that $75,000 for past pain and suffering and $150,000 for future pain and suffering were the minimum amounts the jury could have awarded as a matter of law where plaintiff sustained an annular tear and herniated discs at L4-5 and L5-S1 that required surgery); Sanz v. MTA-Long Island Bus, 46 A.D.3d 867, 867 (2d Dep't 2007) (recommending $200,000 for past pain and suffering and $200,000 for future pain and suffering where plaintiff claimed she sustained herniated discs in cervical spine, numbness and tingling in both hands, and underwent an anterior cervical

6

discectomy with an allograft and plate fusion); Sears v. Janow, No. 601634/02, 2003 WL 22490309 (N.Y.-JV September 2003) (agreeing to settlement of $585,000 where plaintiff sustained a right-sided herniated disc at C5-6 which required an anterior cervical discectomy and fusion)[3]; Davidson v. Ronal Products, Inc., No. 25533/00, 2002 WL 34704553 (N.Y.-JV December 2002) (reducing jury verdict of $1,462,500 to $585,000 where plaintiff suffered a herniated cervical disc at C6-C7 which resulted in a discectomy and fusion surgery, and also sustained a bulging lumbar disc at L4-L5); Diaz v. West 197th St. Realty Corp., 290 A.D.2d 310, 312 (1st Dep't 2002) (awarding $450,000 for future pain and suffering for plaintiff with herniated disc and spinal fusion surgery); Laguesse v. Storytown U.S.A. Inc., 296 A.D.2d 798, (3d Dep't 2002) (finding $175,000 for future pain and suffering not excessive in personal injury suit against amusement park where patron was injured and underwent spinal fusion surgery); Solomons v. Walgreen E. Co., Inc., 2001 WL 1590834 (N.Y.–JV September 2001) (awarding $300,000 to plaintiff who suffered herniated cervical discs at C5-6 and C6-7 and an impingement of the tendon of the right shoulder; underwent anterior cervical discectomy and fusion surgery, decompression surgery on his shoulder, and a posterior fusion which utilized a bone graft from his hip); Skow v. Jones, Lange & Wooton, Corp., 240 A.D.2d 194 (1st Dep't 1997) (increasing award to $175,000 for past pain and suffering and $125,000 for future pain and suffering where plaintiff's herniated discs required steroid injections, surgery, and medication indefinitely while limiting the plaintiff's ability to lift heavy loads).

---

[3] In Mercado v. ChoYang Med. Co., No. 07-CV-3563 (NG), 2015 WL 6108246, at *6 n.1 (E.D.N.Y. Oct. 15, 2015), the court noted that plaintiff provided the court with copies of abstracts of the verdicts and settlements in Sears v. Janow and "[a]lthough the abstracts include[d] Westlaw citations, the court has been unable to locate the abstracts of these cases in the Westlaw database."  Notwithstanding, the Mercado court included a parenthetical regarding the settlement reached in the Sears case.

Having examined the particular facts of this case and comparing the recovery to those in similar actions, the Court finds that a pain and suffering award of $350,000 is appropriate; $60,000 of that amount is for past pain and suffering from the date of the accident to the date of this decision, and $290,000 is for future pain and suffering.

### III. CONCLUSION

For the aforementioned reasons, judgment shall be entered in favor of Plaintiff in the amount of $460,764.46, which represents Plaintiff's past lost earnings from 2015 through the end of April of 2019 ($67,061), Plaintiff's adjusted earnings in future years ($43,703.46), as well as an award of damages for past pain and suffering ($60,000) and for future pain and suffering ($290,000). This constitutes the Decision and Order of the Court.

Dated: May 14, 2019
White Plains, New York

**SO ORDERED**

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York